## HARJO v. HARJO et al.

No. 20242. Opinion Filed July 21, 1931.

Mansfield, Brunson, King & Ahrens, for plaintiff in error.

John H. Brennan, G. J. Neuner, Foster V. Phipps, Thomas J. Casey, Jack Paden, John M. Chick, and Felder & Moak, for defendants in error.

RILEY, J. This is an appeal from an order sustaining separate demurrers to the petition of plaintiff in an action brought to quiet title and for the possession of certain real estate. The land involved was the allotment of Duffie Harjo, a full-blood Seminole Indian, Roll No. 369.

The petition alleges that Duffie Harjo died intestate about July 2, 1904, seized and possessed of said land, leaving surviving him Eliza Harjo, one of the defendants herein, and one child, Albert Harjo, a son of Duffie and Eliza Harjo; that Albert Harjo died on March 18, 1909, intestate, unmarried, without issue and without brothers or sisters or their descendants, leaving surviving him his mother, Eliza Harjo, and his paternal grandmother, Jennie Harjo, the plaintiff, who was a full-blood Seminole Indian, Roll No. 368, and the mother of said Duffie Harjo; that Eliza Harjo was no blood relative of Duffie Harjo; that defendants were claiming some interest in said land under certain instruments of record, and were in wrongful possession and wrongfully withheld possession of said premises from the plaintiff.

Defendants filed separate demurrers to plaintiff's second amended petition. The one ground common to all the demurrers was that the petition as amended did not state facts sufficient to constitute a cause of action in favor of plaintiff and against the defendants. The demurrers being sustained, plaintiff elected to stand upon the second amended petition. The same was thereupon dismissed by the court, and plaintiff appeals.

The sole question involved is whether, upon the death of Albert Harjo, his mother, Eliza Harjo, or his paternal grandmother, Jennie Harjo, inherited the land.

Both parties concede that upon the death of Duffie Harjo, the allottee, on July 2, 1904, the land in question descended to his son, Albert Harjo.

Plaintiff, in her original brief, contends that upon the death of Albert Harjo, March 18, 1909, the descent was cast under the law in force in Oklahoma at that time, section 6895, Wilson's Stats. of Oklahoma 1903. She relies upon the last sentence of subdivision 2 of that section, which reads:

"If decedent leave no issue, nor husband, nor wife, the estate must go to the father."

She contends that, the estate in the hands of Albert Harjo being ancestral, having come to him by his father, Duffie Harjo, and he being dead, the lands must ascend through the paternal line to the next person capable of inheriting, which would be the paternal grandmother of Albert Harjo, Jennie Harjo, the mother of Duffie. She contends that the estate being ancestral, there is no way that it can be divested from the blood of the paternal line except by statute, and asserts that there is no such statute. She entirely overlooks the provision of subdivision 4 of section 6895, Wilson's Stats. of Oklahoma 1903, which was in effect on March 18, 1909, the date of the death of Albert Harjo, and which provides:

"If the decedent leave no issue, nor husband, nor wife, nor father, and no brother or sister is living at the time of his death, the estate goes to his mother to the exclusion of the issue, if any, of deceased brothers or sisters."

We think this provision clearly applies to the descent of the land in question upon the death of Albert Harjo. This subdivision was evidently intended to apply where the decedent left no father, but left a mother as in the instant case.

Subdivision 2, supra, provided that, in case the decedent left no issue, the estate should go in equal shares to the surviving husband or wife and the surviving father. But if there be no surviving father, then the one-half that would otherwise descend to the father would go in equal shares to the brothers and sisters and to the children of the deceased brothers and sisters by right of representation, with a further provision that if he leave a mother also, the mother then would take equally with such brothers and sisters. Then comes the sentence relied upon, viz., If decedent leave no. issue, nor husband, nor wife, the estate must go to the father." Clearly, the latter provision contemplated a father living and capable of taking. It was certainly not intended to apply

where the father, as in the instant case, was deceased.

The third subdivision provided that, in case there be no issue, nor husband, nor wife, nor father nor mother, then the surviving brothers and sisters and children of any deceased brothers or sisters took the entire estate, and again provided that, in case a mother should survive, she should share equally with the brothers and sisters; then follows the subdivision 4, quoted above, which we believe applies to the facts pleaded in the petition.

The amended petition shows upon its face that when Albert Harjo died on March 18, 1909, he left no issue nor wife nor father nor brother nor sister living, but did leave surviving him his mother, Eliza Harjo. The amendment of section 6895, supra, by chapter 35, S. L. 1909, did not affect the succession in this case, since that amendment was not approved until March 20, 1909, and did not become effective until June 10, 1909. Therefore, the case of Squint Eye v. Crooked Arm, 56· Okla. 69, 155 Pac. 1147, cited by plaintiff, has no application. However, there is nothing in that case which would indicate that subdivision 4, of section 6895. supra, was not in full force on March 18, 1909, the date of the death of Albert Harjo.

Plaintiff, in her reply brief, contends that section 2531, of chapter 49, Mansfield's Digest of the Stats. of Arkansas, controls, by reason of the provision of the Seminole Treaty as ratified by Congress. Her contention in this regard cannot be upheld.

In Mill's Oklahoma Land Laws, section 271, it is said:

"By virtue of the Enabling Act of the Constitution, the Oklahoma law of descent and distribution in force in the Territory of Oklahoma at the time of the admission of the state, was extended over the persons and estate of the members of the Five Civilized Tribes in substitution of the Arkansas law theretofore in force in said Nations."

It was expressly so held in Re Pigeon's Estate, 81 Okla. 180, 198 Pac. 309; Teague v. Smith, 85 Okla. 12, 204 Pac. 439; Murray v. Goad, 88 Okla. 300, 213 Pac. 73; and Harrison v. Harrison, 87 Okla. 91, 209 Pac. 737.

Every argument made by plaintiff is answered adversely to her contention in Jefferson v. Fink, 247 U. S. 288, 62 L. Ed. 1117, wherein it was held:

"The making of an Indian allotment and the issuance of tribal deeds under the Supplemental Creek Agreement of June 30, 1902 (32 Stat. at L. 500, ch. 1323), which contained a provision that the descent of Creek allotments should be according to the Arkansas law, which had theretofore been put in force in the Indian Territory, did not invest those who would be heirs under that law with a right to inherit which could not be taken away or impaired by subsequent federal or state legislation substituting the Oklahoma law of descent for that of Arkansas."

It was therein expressly held that upon the admission of Oklahoma to statehood, the laws of descent and distribution of the Territory of Oklahoma then in force supplanted the provision of chapter 49, Mansfield's Laws of Arkansas, theretofore in force in the Five Civilized Tribes.

The contention was there made that the allotment was made and the tribal deed issued under an Act of Congress which contained· a provision that the descent should be according to the Arkansas law, and that thereby those who would be heirs under that law became invested with the right to inherit, which could not be taken away or impaired by subsequent legislation, either federal or state. It was further contended that, even if Congress possessed the power to substitute some other law of descent, it had not been exercised. Both contentions were held untenable.

In discussing the effect of the Act of Congress putting in force chapter 49, Mansfield's Digest, the court said:

"What was said about the rules of descent was purely legislative, not contractual; and its presence in the act gave it no effect that it would not have had as a separate enactment. Like other rules of descent, it was subject to change by the lawmaking power as to any land not already passed to the heir by the death of the owner. Not until the ancestor dies is there any vested right in the heir. Cooley, Const. Lim. (7th Ed.) 512."

On the question of the substitution of the Oklahoma law of descent for that of Arkansas, the court said:

"We have seen that Congress was accustomed to subjecting allotted Indian lands to the local laws of descent, and also that its action in putting the Arkansas law in force in the Indian Territory was intended to be **merely provisional.** With this in mind, it seems very plain that the provisions before quoted from the Enabling Act were intended to result, at the time of the admission of the new state, in the substitution of the Oklahoma law of descent for that of Arkansas, theretofore put in force in the Indian Territory. The recognition given to the Oklahoma law by Congress in the Act of 1908,

hardly can be explained on any other theory."

The land involved in Jefferson v. Fink, supra, was a Creek allotment, but the same rule would apply to the provisions of the Seminole Treaty and the acts of Congress ratifying the same.

Clearly then, chapter 49, Mansfield's Digest, governed the descent of the land here involved upon the death of the original allottee, Duffie Harjo, July 2, 1904, and his son, Albert Harjo, inherited from him, but before the death of Albert Harjo, the law of descent of Oklahoma had been substituted for that of Arkansas, and under the provisions of subdivision 4 of section 6895, Wilson's Stats. 1903, then in force, Eliza Harjo, the mother of Albert Harjo, who the petition alleges was still living, inherited the land to the exclusion of the paternal grandmother, Jennie Harjo.

The amended petition shows upon its face that plaintiff had no interest in the land, and the demurrers were properly sustained.

The judgment is affirmed.

LESTER, C. J., CLARK, V. C. J., and HEFNER, SWINDALL, and KORNEGAY, JJ., concur. CULLISON, ANDREWS, and McNEILL, JJ., absent.